UNITED STATES DISCTIRCT COURT
SOUTHERN DISTRICT OF FLORIDA

KERRY A. THOMPSON,                               CASE NO._____-CIV-

       Plaintiff,

   v.

A1A TRANSPORTATION, INC.

       Defendant.

_____/

## COMPLAINT

    The Plaintiff, KERRY A. THOMPSON (the "Plaintiff"), files this Complaint against A1A TRANSPORTATION, INC. (the "Defendant" or "A1A Transportation") and states as follows:

### JURISDICTION AND VENUE

1.      The Plaintiff files this action against the Defendant because the Defendant discriminated against the Plaintiff due to her gender in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e and Florida Civil Rights Act, Fla. Stat. § 760.01, et. seq. The Defendant also retaliated against her. Thus, this Court has jurisdiction pursuant to 28U.S.C. § 1331.

2.      The Plaintiff resides in Coral Springs, Florida.

3.      The Defendant A1A Transportation is a company created under the laws of the State of Florida and operates out of an office in Davie, Florida.

4.      The actions giving rise to this action occurred in Broward County, Florida. This venue is proper pursuant to 28 U.S.C. § 1391(b) and (c).

10

## **GENERAL ALLEGATIONS**

5.     A1A Transportation is a company that provides transportation to charter schools throughout South Florida.  The Plaintiff was employed at A1A and was terminated in December of 2019.  The Plaintiff was sexually harassed by her supervisor, Onexy Gonzalez, on a daily basis from February 2019 until she was terminated in December of 2019.  Mr. Gonzalez terminated her because she refused his daily harassment.   Mr. Onexy Gonzalez is the manager. The Plaintiff worked as a maintenance coordinator.  Upon information and belief, he had the authority to hire, fire, assigning specific work schedule and/or promotions to the Plaintiff.

6.     The Defendant employs more than 15 employees.

7.     The Plaintiff was hired in February of 2019 and was wrongfully terminated in December of 2019.

8.     Throughout her employment, Mr. Gonzalez sexually harassed the Plaintiff, both quid pro quo sexual harassment and he created a hostile and sexually charged working environment.  When it became clear that she was going to disclose the harassment, she was fired in December of 2019.

9.     Mr. Gonzalez began harassing her during the Valentine's Day week in 2019. He asked the Plaintiff what she was getting for that day, and in response, she told Mr. Gonzalez that she had separated from her husband at the time, and that she was a single mother.  Shortly after, Mr. Gonzalez began asking her to go out with him to dinner or have drinks after work but she always declined his invitations.  He asked her to go have drinks with him on a weekly basis and he told her that he wondered how she would behave after having a "few drinks in" her, hinting that he would take advantage of her in such situation.   He often told her that she should drive to Davie, where he lived, to visit him after work. He also told her that he would drive to Coral Springs, where she lived, to visit her.  She refused to see Mr. Gonzalez outside of work or to date him.

11

10.     In another example, sometimes the job required that Mr. Gonzalez and the Plaintiff drive together to various charter schools.  On one such trip, as they drove to a school in West Palm Beach, Mr. Gonzalez told the Plaintiff that they should stop at her house.  She refused.  In other occasions, Mr. Gonzalez told the Plaintiff that they could get a room in a Hotel in Miami that had different theme rooms so they could "chill."  She refused to do that as well. She told Mr. Gonzalez that she was not interested in dating him or in being with him.  He did not stop the harassment.

11.     The building where the Plaintiff worked had various bays where the school buses were maintained and there was a shop that contained the auto parts for the buses.  She worked in the area where the mechanics worked.  There was only one unisex bathroom at that location.  The bathroom door was faulty.  One day, the Plaintiff was using the bathroom and Mr. Gonzalez opened the bathroom door while she was still using it.  He stared at her while she used the bathroom and then closed the door.  Afterwards, he repeatedly joked that he saw her peeing.

12.     At another time, Mr. Gonzalez had a private office and he often used the office with his door closed.  The Plaintiff walked into his office to drop off some paperwork.  Mr. Gonzalez was watching pornography on his iPad.  Even though he saw that the Plaintiff was in his office, he continued watching the pornography and showed her the screen saying "take a look." She left the office as soon as she realized he was watching pornography.

13.     In addition, Mr. Gonzalez regularly showed the Plaintiff pictures of lingerie that he told her he wanted to purchase for his wife.  He then asked the Plaintiff what color lingerie she wanted him to buy her.  This happened many times.  She refused the offer.

14.     Mr. Gonzalez's harassment increased and became more sexually charged.  He harassed her daily with very explicit language.  For example, Mr. Gonzalez repeatedly told her that he wanted to "eat your pussy" or "eat your ass."  He also told her that he wondered what her "pussy tasted like."  He also told her that he wanted to go back to masturbate and asked her to grab his

12

penis. She refused. He told her that he dreamed of her and that he thought about her while he had sex with his wife.  Even though she constantly refused his advances, he repeatedly asked her if she was attracted to him.   He repeatedly made comments about her body, focusing on her chest.

15.     Eventually, Mr. Gonzalez began exposing himself to the Plaintiff.  For example, on one occasion, the Plaintiff and Mr. Gonzalez were inspecting the buses to determine if they needed any parts.  They went into one of the buses.  Mr. Gonzalez exposed himself to the Plaintiff asking her whether she liked his penis.  He told her that he wanted to have sex with her on the bus.  She refused.  On another occasion, the Plaintiff and Mr. Gonzalez were driving to West Palm Beach on a company car to go to a job site, he grabbed the Plaintiff's hand and forced her hand to touch his penis.  She wrestled her hand away from him and he asked why the Plaintiff was so afraid to be with him.   As yet another example harassment, they were driving to Home Depot to pick up brooms and other products to take back to the office.  Shockingly, Mr. Gonzalez reached over and grabbed the Plaintiff's breast. At another time, Mr. Gonzalez also showed explicit pictures of his penis to the Plaintiff and asked her if she had any naked pictures of her in her phone.

16.     Mr. Gonzalez harassed the Plaintiff on a daily basis.   Mr. Gonzalez made degrading or sexual remarks to the Plaintiff almost every time he saw her.

17.     Given that the Plaintiff refused and/or rejected Mr. Gonzalez's advances, he retaliated against her.  For example, Mr. Gonzalez refused to allow her to work on Saturdays so that she could get overtime work.  Initially, Mr. Gonzalez would schedule her to work on Saturdays.  After she rejected his advances, he stopped placing her on the schedule for Saturdays, which in turn, reduced the Plaintiff's hours and pay.  In addition, he instructed other male employees not to speak to the Plaintiff because he would get jealous if they spoke to her. In addition, Mr. Gonzalez began treating the Plaintiff in a more aggressive way.  He would nit pick at her work and then would berate her.  When it became clear that the Plaintiff avoided spending time alone with Mr.

Gonzalez he began treating her in a more aggressive manner.  The Plaintiff was afraid to lose her job because she rejected his advances.

18.     The Plaintiff contacted a person at Human Resources to report the sexual harassment and to complain about her manager's conduct toward her.  She asked the person at Human Resources about the process of reporting sexual harassment and she took the forms that were necessary to start the process. The HR person was friends with Mr. Gonzalez.  Her office was next to Mr. Gonzalez's office.  The HR person told the Plaintiff that she had noticed that the Plaintiff had become quiet at work and looked uncomfortable.  At that time, HR became aware that the Plaintiff had been subjected to sexual harassment.  After the Plaintiff told the HR person that she was being sexually harassed, Mr. Gonzalez increased his retaliation. Even though the human resources department became aware that the Plaintiff had been subjected to sexual harassment, it did nothing to investigate the issue or to follow up with the Plaintiff. Some time later, on or about December 9, 2019, the Plaintiff again approached the HR person and told her that Mr. Gonzalez was sexually harassing her and explained how the harassment was affecting her.  She dreaded coming to work and she was afraid of Mr. Gonzalez.  The HR person indicated to the Plaintiff that they would inform the "higher ups" about her issues.  Shortly after that conversation, on the same day, Mr. Gonzalez fired the Plaintiff.   The Plaintiff contacted other people in the HR department again but they failed to investigate any issues and did nothing to address her concerns.

19.     Throughout her employment, Mr. Gonzalez regularly sexually harassed the Plaintiff and constantly asked her out and/or asked her to have sex with him. He also created a hostile environment throughout her employment by repeatedly exposing himself, touching her without her consent, showing her explicit sexual pictures and commenting on her breasts and other body parts.  On the day he fired her, Mr. Gonzalez realized that she was not going to keep quiet about the harassment, so he fired her.

14

20.     On or about February 25, 2020, the Plaintiff timely filed charges with the Equal Employment Opportunity Commission ("EEOC").  The EEOC investigated the charges pursuant to a shared agreement with the Florida Commission on Human Relations. On April 15, 2021, the EEOC sent the Plaintiff a Dismissal and Notice of Rights letter.

21.     The conditions precedent to filing this action has been waived, and/or have been performed by the Plaintiff.  The Plaintiff retained undersigned counsel and has incurred attorney's fees and costs.

## COUNT I
## (VIOLATION OF TITLE VII, 42 U.S.C. § 2000e)

22.     Plaintiff herein alleges and incorporates by reference Paragraphs 1 – 20 of the Complaint as if fully set forth herein and further allege that:

23.     The Plaintiff is a woman.  Since the commencement of her employment, her supervisor engaged in a continuous and unrelenting campaign of harassment of the Plaintiff based her gender and was sexual in nature.  Almost on a daily basis, among other things as described above, her supervisor engaged in the following conduct:

(a) repeatedly commented on her breasts and other body parts;

(b) repeatedly stared at her breasts, buttocks and other body parts;

(c) repeatedly asking her to go out, have sex with him in exchange for a better work schedule;

(d) exposing himself to the Plaintiff and showing sexually explicit photographs of his penis;

(e) grabbing her breast and/or forcing her to touch his penis;

(f) repeatedly asking her to go to a hotel or her house;

(g) repeatedly telling her he wanted to do sexual things to her;

(h) overall lewd and offensive behavior (flirtatious commentary, sexually explicit statements, viewing pornography)

15

24.     This conduct, and much more conduct like it, occurred on multiple occasions during the Plaintiff's employment.  Once the supervisor realized that she was not going to sleep with him, he continuously criticized her work, stopped scheduling her on Saturdays (for overtime work) and berated her on several occasions.  The harassment affected the Plaintiff's ability to perform her job.  The Defendant is strictly liable for the sexual harassment committed by its employees, because the harassers used their actual or apparent authority to further the unlawful conduct and otherwise aided and abetted the other harasser in accomplishing the unlawful conduct.

25.     By his conduct, Mr. Gonzalez engaged in sexual harassment toward the Plaintiff in violation of Title VII.  He engaged in quid pro quo sexual harassment and created a hostile working environment.  The Plaintiff became fearful, extremely anxious and felt extreme humiliation.  Due to the Defendant's Title VII violations, it caused the Plaintiff compensatory damages, as well as humiliation, embarrassment, and extreme emotional distress.

26.      The Defendant knew, or should have known, of the supervisor's conduct.  The Plaintiff let a person at the HR department that she was being sexually harassed.  Then, in December of 2019, she told the HR department how the conduct was affecting her work.  Shortly after, Mr. Gonzalez fired the Plaintiff.

27.     The hostile work environment was sufficiently severe and pervasive such that it altered the conditions of Plaintiff's employment, affected the terms, conditions and privileges thereof in violation of Title VII, and resulted in Plaintiff's discharge from her employment.

28.     The Defendant's actions were intentional and/or with reckless disregard for Plaintiffs' rights, warranting an award of punitive damages to Plaintiffs.

29.     As a result of the Defendant's willful violation of the Tittle VII, the Plaintiff has been damaged.  She is entitled to back pay, front pay, compensatory damages, liquidated damages, and punitive damages.  She also suffered mental pain and anguish as well as emotional

16

distress.

WHEREFORE, the Plaintiff respectfully requests that the Court enter a judgment against the Defendant and in favor of the Plaintiff for back pay, front pay, compensatory damages, liquidated damages, punitive damages, mental pain and anguish damages, in the amount to be proven at trial, plus interest, plus attorney's fees, and costs.

**COUNT II**
**(RETALIATION- TITLE VII)**

30.     Plaintiff herein alleges and incorporates by reference Paragraphs 1 – _ _ of the Complaint as if fully set forth herein and further allege that:

31.     Title VII, and specifically 42 U.S.C. Section 2000e-3, makes it unlawful for an employer to retaliate against an employee who has opposed unlawful employment practices and/or who has assisted or participated in another employee's claim of discrimination or harassment.

32.     The Defendant retaliated against Plaintiff because she resisted unlawful practice of sexual harassment in violation of said anti-retaliation provisions of Title VII.

33.     Such retaliation included, without limitation, affecting Plaintiff's ability to perform her assigned tasks by, among other things, negative changes in assignments and schedule; firing her and, in general, ensuring that Plaintiff's work environment remained increasingly hostile, offensive and intolerable.

34.     As a result of such conduct by the Defendant, Plaintiff has suffered and will continue to suffer damages such as back pay, front pay and compensatory damages for, among other things, emotional distress, humiliation, mental pain and anguish.

35.     The Defendant's retaliatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's civil rights, Plaintiff is further entitled to an award of punitive damages.

WHEREFORE, the Plaintiff respectfully requests that the Court enter a judgment against

17

the Defendant and in favor of the Plaintiff for back pay, front pay, compensatory damages, liquidated damages, punitive damages, mental pain and anguish damages, in the amount to be proven at trial, plus interest, plus attorney's fees, and costs.

## COUNT III
### (Violation of FCRA Fla. Stat. Sec. 760.01, et. seq.)

36.    Plaintiff herein alleges and incorporates by reference Paragraphs 1 – 20 of The Complaint as if fully set forth herein and further allege that:

37. The Defendant violated Florida's Civil Rights Act because her manager sexually harassed the Plaintiff throughout her employment with the Defendant.  The supervisor targeted her because she is a woman.  Since the commencement of her employment, her supervisor engaged in a continuous and unrelenting campaign of harassment of the Plaintiff based her gender and was sexual in nature.  Almost on a daily basis, among other things as described above, her supervisor engaged in the following conduct:

(a) repeatedly commented on her breasts and other body parts;

(b) repeatedly stared at her breasts, buttocks and other body parts;

(c) repeatedly asking her to go out, have sex with him in exchange for a better work schedule;

(d) exposing himself to the Plaintiff and showing sexually explicit photographs of his penis;

(e) grabbing her breast and/or forcing her to touch his penis;

(f) repeatedly asking her to go to a hotel or her house;

(g) repeatedly telling her he wanted to do sexual things to her;

(h) overall lewd and offensive behavior (flirtatious commentary, sexually explicit statements, viewing pornography)

38.    This conduct, and much more conduct like it, occurred on multiple occasions

during the Plaintiff's employment.  Once the supervisor realized that she was not going to sleep with him, he continuously criticized her work, stopped scheduling her on Saturdays (for overtime work) and berated her on several occasions.  The harassment affected the Plaintiff's ability to perform her job.

39.     By his conduct, Mr. Gonzalez engaged in sexual harassment toward the Plaintiff in violation of FCRA.  He engaged in quid pro quo sexual harassment and he created a hostile working environment.   The Plaintiff became fearful, extremely anxious and felt extreme humiliation.   Due to the Defendant's FCRA violations, it caused the Plaintiff compensatory damages, as well as humiliation, embarrassment, and emotional distress.

40.     Eventually the harassment led to the Plaintiff being fired.

41.     As a result of the Defendant's willful violation of the FCRA, the Plaintiff has been damaged.  She is entitled to back pay, front pay, compensatory damages, liquidated damages and punitive damages.  She also suffered damages for the pain and suffering, mental distress, humiliation, embarrassment and anxiety suffered by the plaintiff as a result of defendant's conduct.

WHEREFORE, the Plaintiff respectfully request that the Court enter a judgment against the Defendant and in favor of the Plaintiff for back pay, front pay, compensatory damages, liquidated damages and punitive damages, mental pain and suffering, mental anguish, distress, humiliation, embarrassment and anxiety in the amount to be proven at trial, plus interest, plus attorney's fees, and costs.

## COUNT IV
## (RETALIATION- FRCA)

42.     Plaintiff herein alleges and incorporates by reference Paragraphs 1 – 20 of the Complaint as if fully set forth herein and further allege that:

43.     The FRCA makes it unlawful for an employer to retaliate against an employee who has opposed unlawful employment practices and/or who has assisted or participated in another employee's claim of discrimination or harassment.

44.     The Defendant retaliated against Plaintiff because she resisted an unlawful practice of sexual harassment in violation of said anti-retaliation provisions of the FRCA.

45.     Such retaliation included, without limitation, affecting Plaintiff's ability to perform her assigned tasks by, among other things, negative changes in assignments; unwarranted increase in job responsibilities; firing her and, in general, ensuring that Plaintiff's work environment remained increasingly hostile, offensive and intolerable.

46.     As a result of such conduct by the Defendant, Plaintiff has suffered and will continue to suffer damages such as back pay, front pay and compensatory damages for, among other things, emotional distress, humiliation, mental pain and anguish.

47.     The Defendant's retaliatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's civil rights, Plaintiff is further entitled to an award of punitive damages.

WHEREFORE, the Plaintiff respectfully requests that the Court enter a judgment against the Defendant and in favor of the Plaintiff for back pay, front pay, compensatory damages, liquidated damages, punitive damages, mental pain and anguish damages, in the amount to be proven at trial, plus interest, plus attorney's fees, and costs.

<u>DEMAND FOR A JURY TRIAL</u>

Plaintiffs demand a jury trial on any and all triable issues.

DATE: June 3, 2021                                    Respectfully submitted,

                                                             /s/Andres H. Lopez

20

Andres H. Lopez
Fla. Bar No. 0067564
The Andres Lopez Law Firm, PA
101 NE 3rd Avenue, Suite 1500
Ft. Lauderdale, FL  33301
Phone: 954-237-8138